**NOS. 24-4355(L); 24-4485**

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## CAMDEN ANTWAIN PAYNE,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
AT GREENSBORO**

_____

**BRIEF OF APPELLANT**

_____

**George E. Crump, III**
ATTORNEY AT LAW
**P.O. Box 1523**
**Rockingham, NC 28380**
**(910) 997-5544**
**georgecrump@bellsouth.net**

*Counsel for Appellant*

## <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES...................................................................... iii

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF THE ISSUES .............................................................2

STATEMENT OF THE CASE.................................................................2

SUMMARY OF THE ARGUMENT .......................................................6

ARGUMENT ..........................................................................................9

    I.     THE DISTRICT COURT ERRED IN IMPOSING IN THE
          WRITTEN JUDGMENT SPECIAL TERMS OF SUPERVISED
          RELEASE BROADER THAN THE SPECIAL TERMS OF
          SUPERVISED RELEASE SUMMARIZED IN OPEN COURT
          IN CASE 1:23CR229-1 ........................................................9

          A.    Standard of Review...............................................9

    II.    THE DISTRICT COURT LACKED JURISDICTION TO
          REVOKE THE DEFENDANT'S TERM OF SUPERVISED
          RELEASE AFTER ITS EXPIRATION IN CASE 1:19CR623-1 .......16

          A.    Standard of Review...............................................16

          B.    Application of 18 U.S.C. § 3583(i)..........................16

          C.    The Fugitive Tolling Doctrine..................................18

          D.    The district court erred in failing to determine the ending
                date that Payne's supervised release was tolled........................20

          E.    The district court clearly erred in finding that the
                beginning date for fugitive tolling was October 8, 2022 ..........22

          F.    Any fugitive tolling must begin no earlier than March 6,
                2023 ...................................................................25

i

CONCLUSION ........................................................................................26

REQUEST FOR ORAL ARGUMENT ..................................................27

CERTIFICATE OF COMPLIANCE .......................................................28

# <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases:**

United States v. Buchanan,
    638 F.3d 448 (4th Cir. 2011) ....................................................<u>passim</u>

United States v. Harris,
    878 F.3d 111 (4th Cir. 2017) ..............................................................16

United States v. Hernandez- Ferrer,
    599 F.3d 63 (1st Cir. 2010) ................................................................19

United States v. Matthis,
    103 F.4th 193 (4th Cir. 2024) ....................................................14, 15

United States v. Rogers,
    961 F.3d 291 (4th Cir. 2020) ......................................................<u>passim</u>

United States v. Singletary,
    984 F.3d 341 (4th Cir. 2021) .......................................7, 13, 14, 15

United States v. Thompson,
    924 F.3d 122 (4th Cir. 2019) ....................................................<u>passim</u>

**Statutes:**

18 U.S.C. § 922(g)(1) ......................................................................1, 3

18 U.S.C. § 924(a)(8) ......................................................................1, 3

18 U.S.C. § 924(c)(1)(A)(i) ................................................................3

18 U.S.C. § 3231 ..................................................................................1

18 U.S.C. § 3583(i) ...................................................................<u>passim</u>

18 U.S.C. § 3624(e) ...........................................................................19

18 U.S.C. § 3742(a) .............................................................................1

21 U.S.C. § 841(a)(1).................................................................1, 2, 3

21 U.S.C. § 841(b)(1)(C) ...........................................................1, 2, 3

28 U.S.C. § 1291 .................................................................................1

**Rules:**

Fed. R. App. P. 4(b)...........................................................................2

**Other Authorities:**

Standard College Dictionary,
Funk & Wagnells; Harcourt, Brace & World, Inc.,© 1968.................................22, 23

## STATEMENT OF JURISDICTION

This is a direct appeal by Camden Antwain Payne from Final Judgment and Sentence in the United States District Court for the Middle District of North Carolina in case 1:23CR229-1 before the Honorable Catherine C. Eagles, Chief United States District Court Judge.

This is a direct appeal by Camden Antwain Payne from Final Judgment and Commitment Supervised Release Violation Hearing in the United States District Court for the Middle District of North Carolina in case 1:19CR623-1 before the Honorable Catherine C. Eagles, Chief United States District Court Judge.

Subject matter jurisdiction was conferred upon the United States District Court pursuant to, and in accordance with, Title 18 U.S.C. § 3231.

Subject matter jurisdiction is conferred upon the Fourth Circuit Court of Appeals pursuant to, and in accordance with, 18 U.S.C. § 3742(a), Title 28 U.S.C. § 1291.

Camden Payne pled guilty on March 14, 2024 in case 1:23CR229-1 to possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Camden Payne was sentenced on June 21, 2022. Entry of Judgment in a Criminal Case was on June 24, 2024.

Camden Payne admitted the violations of supervised release in 1:19CR623-1. He was sentenced on supervised release revocation on June 21, 2024. Final Judgment and Commitment Supervised Release Violation Hearing was entered on June 24, 2024.

Camden Payne gave Notice of Appeal in both 1:23CR229-1 and 1:19CR623-1 on July 7, 2024 pursuant to Federal Rules of Appellate Procedure 4(b).

## STATEMENT OF THE ISSUES

I.     The District Court erred in imposing in the written judgment special terms of supervised release broader than the special terms of supervised release summarized in open court in case 1:23CR229-1.

II.    The District Court lacked jurisdiction to revoke the defendant's term of supervised release after its expiration in case 1:19CR623-1.

## STATEMENT OF THE CASE

An Indictment was filed against Mr. Payne on June 26, 2023 in the Middle District of North Carolina in case 1:23CR229-1. (JA16)

The Indictment is a three count indictment. Count One charges Mr. Payne with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

2

Count Two charges Mr. Payne with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Count Three charges Mr. Payne with possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

Mr. Payne pled guilty on March 14, 2024 pursuant to a written plea agreement to Count One, possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and to Count Three, possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (JA54)

The district court sentenced Mr. Payne on June 21, 2024 in case 1:23CR229-1 to a term of Sixty months (60) of imprisonment on Counts 1 and 3 to run concurrently, four (4) years supervised release, and a $100.00 special assessment each count. The 60 months imprisonment is to run consecutive to the sentence imposed in case 1:23CR229-1. (JA112, JA116)

Judgment was entered on June 24, 2024 in case 1:23CR229-1.  (JA131)

The district court revoked supervised release and sentenced Mr. Payne on June 21, 2024 in case 1:19CR623-1 to thirty (30) months imprisonment, no further supervised release. (JA131)

Judgment and Commitment Supervised Release Violation Hearing was entered on June 24, 2024. (JA118)

Notice of Appeal was filed on July 7, 2024 in both cases. (JA138

Mr. Payne agreed in his plea agreement, in case 1:23CR229-1, in exchange for the government's agreement to dismiss Count Two, to waive his right to a direct appeal of his conviction and sentence except for three exceptions: 1) a sentence above the statutory maximum, 2) the court enters a sentence based on an unconstitutional factor, 3) the government appeals the sentence. (JA32)

1. Matthew White, Government Witness

Matthew White is a supervisory United States Probation Officer. (JA74).

Mr. White supervised Mr. Payne a couple of times, recently in 2020, 2021, 2022. (JA75)

Mr. Payne was very respectful. He "was cooperative, respectful, maintained a residence with his family for the duration that I supervised him." (JA75)

Mr. Payne did "auto bodywork, restoration, painting, fixing vehicles that have had some kind of damage, whether it be through crashes or dents or scratches, whatever it may be." (JA75).

The work of Mr. Payne that Mr. White observed was good work. (JA76)

"We didn't really maintain a regular meeting schedule. It was more of reaching out to Camden to see where he was, whether at home, in the community, working on a job, or having him come into the office." (JA76)

Ms. Caldwell, a second officer, also supervised Mr. Payne. (JA76).

One of Mr. Payne's violations was that he not possess a controlled substance and not have positive drug tests. (JA77)

Mr. Payne told Mr. White that he was using CBD products to help with ulcerative colitis. (JA77)

Mr. White instructed Payne to discontinue whatever products he was using because the THC levels appeared to not meet CBD specifications (JA79)

Mr. White had a telephone contact in September 2022 to discuss Mr. Payne self surrendering in Virginia on warrants which had been pending in Virginia for close to a year. (JA81)

As to Mr. Payne's reporting prior to August, [2022], "It was good. There's times where he would not report as instructed. You know, that wasn't the norm, but there would be sporadic times where he had claimed that he forgot to report or had something else going on. After the fact, he would let me know what was going on." (JA81, JA82)

Mr. White talked with Mr. Payne on September 26, 2022. Mr. Payne agreed to self surrender in Virginia to face charges. (JA82)

These charges were dismissed according to Mr. White's understanding. (JA82)

Mr. White instructed Mr. Payne not to use CBD products until providing documentation that the THC levels were acceptable for CBD products. (JA86)

Mr. Payne did not reach out to Mr. White after the events of October 5, 2022. (JA88)

Mr. White had no contact with Mr. Payne after the September 26, 2022 telephone call. (JA88).

Probation was not aware of Mr. Payne's whereabouts in March 2023 when Mr. Payne's supervised release ended. (JA88)

Probation was next aware of Mr. Payne's location was December 5, 2023 when he was arrested in Florida. (JA88, JA89)

Mr. White and Ms. Caldwell attempted to call Mr. Payne. Ms. Caldwell attempted to contact Mr. Payne at his last listed address, the Frederick Road Residence. (JA89)

Mr. Payne never gave Mr. White a new address. (JA89)

## **SUMMARY OF THE ARGUMENT**

In case 1:23CR229-1 the district court imposed 60 month terms of imprisonment on Counts 1 and 3 to run concurrently, four (4) year supervised release, and a $100.00 special assessment each count.

The district court announced the standard terms of supervised release as set forth in the presentence investigation report at Mr. Payne's sentencing hearing.

The district court may have intended to adopt the special terms of supervised release by reference to the presentence investigation report at Mr. Payne's sentencing hearing.

The district court did adopt the justifications for the special terms of supervised release by reference to the presentence investigation report at Mr. Payne's sentencing hearing.

The district court did not adopt the special terms of supervised release by reference to the presentence investigation report at Mr. Payne's sentencing hearing. Instead, the district court at the sentencing hearing summarized the special terms of supervised release.

In its written judgment, the district court included additional terms of supervised release not included in its open court summary.

Mr. Payne's sentence should be vacated and his case remanded for resentencing pursuant to the Rogers/Singletary line of cases.

With regard to Mr. Payne's supervised release revocation hearing, Mr. Payne argues that the district court lacked jurisdiction to revoke Mr. Payne's term of supervised release.

Mr. Payne's term of supervised release was scheduled to end on March 10, 2023. Mr. Payne was arrested on the charges in case 1:23CR229-1 on October 5, 2022. He failed to report to the probation officer these new charges within 72

hours, or by October 8, 2022. Mr. Payne failed to report further to the probation

office. A petition for revocation was filed on March 2, 2023. An arrest warrant was

issued on March 6, 2023. Mr. Payne was arrested in Florida on December 6, 2023.

Mr. Payne's supervised release revocation hearing was held on June 21, 2024.

      Mr. Payne only had 5 months left on supervised release when he was

arrested on October 5, 2022 and failed to report by October 8, 2022.

      The district court applied the fugitive tolling doctrine to Mr. Payne's

supervised release case.

      The district court set forth beginning date of fugitive tolling as October 8,

2022, the failure to report date.

      It is unclear when the district court set the end of fugitive tolling.

      There was insufficient evidence that Mr. Payne absconded supervision

although it was clear that he failed to report on October 8, 2024 and thereafter.

      The district court clearly erred in finding October 8, 2022 as the beginning

date of fugitive tolling.

      The district court erred as a matter of law in not finding an end date for

fugitive tolling.

      Mr. Payne, contends that the beginning date of any fugitive tolling was on

March 6, 2022, the date the arrest warrant was issued.

At most, fugitive tolling was only extended 5 days from March 6, 2022 to March 10, 2022 when Mr. Payne's term of supervised release expired.

The clock begin running to hold Mr. Payne's supervised release on December 6, 2023, the date of his arrest.

Mr. Payne's supervised release hearing was held 196 days later on June 21, 2024. Applying the 5 days of fugitive tolling, the hearing was held 191 days after the government had to opportunity to present Mr. Payne's case.

191 days, over 6 months, does not satisfy the required time frame for a delayed revocation hearing as reasonably necessary.

## **ARGUMENT**

**I.    THE DISTRICT COURT ERRED IN IMPOSING IN THE WRITTEN JUDGMENT SPECIAL TERMS OF SUPERVISED RELEASE BROADER THAN THE SPECIAL TERMS OF SUPERVISED RELEASE SUMMARIZED IN OPEN COURT IN CASE 1:23CR229-1.**

**A.    Standard of Review.**

The Fourth Circuit Court of Appeals reviews the consistency of the oral sentence and the written judgment de novo. United States v. Rogers, 961 F.3d 291, 296 (4th Cir. 2020)

The presentence investigation report sets forth that the defendant shall comply with the mandatory conditions of supervised release. (JA208)

It recommended that the court impose 13 standard conditions of supervised release. (JA208-210)

9

It recommended that the court impose 4 special conditions of supervised release and stated the justifications for each of the four special terms of supervised release. (JA210, JA211)

The district court stated at sentencing "He must comply with the mandatory conditions and the standard conditions. They are all set forth in the presentence report, which I know he read and went over with counsel. I've reviewed them all. There's been no objection. They all seem appropriate to me." (JA112)

I would be glad to read them out loud if you want me to, or I can adopt them by reference." (JA112).

Defense counsel stated "Adopt by reference, your Honor." (JA112)

The district court said "Okay and then the special conditions that the probation office suggested also seemed entirely appropriate. They've explained the reasons why, and really in this case, it seems obvious, but I'll adopt their reasons as well." (JA112)

The district court adopted the standard conditions of supervised release by reference to the presentence investigation report.

The district court did not adopt the special conditions of supervised release by reference to the presentence investigation report but did adopt the reasons of the probation officer by reference to the presentence investigation report.

10

The district court then proceeded to summarize the special conditions of supervised release.

"To summarize those special conditions:" (JA112)

"Substance abuse testing and cooperative participation in treatment as directed, given his history of various substance abuse -- given his history of abuse of various substances. It's not the worst addiction situation I've ever seen, but certainly it's not helping him comply with the law." (JA112, JA113)

"Also, he needs to submit to warrantless searches of his person, residence, office, vehicle, or any property under his control, particularly for guns and drugs; but any time there's reasonable suspicion of contraband, that's appropriate in view of his criminal history for drugs and guns." (JA113)

"Then no use of hemp, marijuana-derived products, such as CBD. If he is prescribed it by a licensed medical provider, he will need to talk about that with his probation officer in advance. You know, that means a doctor, a physician's assistant, a nurse practitioner, somebody authorized by law to prescribe CBD, not-- It's a little unclear what the letter -- the person who wrote that letter, what her background is, but its pretty clear that she's not a medical professional. I don't dispute her personal knowledge, but, still, it needs to be from somebody who can prescribe that." (JA113)

11

"And, finally, he cannot engage in any transaction involving listed chemicals since this involved methamphetamine. So you can't buy Sudafed, for example, at the drugstore, and there's other things that you can't buy as well." (JA113)

The district court asked defense counsel. "Is that an adequate summary of the special conditions? I can read them in full out loud if you want me to." (JA113, JA114)

Defense counsel responded "I'm satisfied, you Honor." (JA114)

The district court added the following special condition of supervision in the written judgment which it did not summarize in open court as to substance abuse treatment: "During the course of treatment, the defendant shall abstain from the use of alcoholic beverages." (JA113, JA135)

The district court added the following special condition of supervision in the written judgment which it did not summarize in open court as to warrantless searches: "the defendant shall warn any residents that the premises may be subject to searches." (JA113, JA135)

The district court added the following special condition of supervision in the written judgment which it did not summarize in open court as to the consumption of CBD: "It is further ordered the defendant provide the probation officer verification of all prescribed medication as directed." (JA113, JA135)

Each of these three special condition provision of supervised release were expressly set forth in the presentence investigation report. (JA210, JA211)

The Fourth Circuit has dealt with a number of cases wherein all or portion of special conditions of supervised release were not announced in open court at the sentencing hearing but were included in the subsequent written judgment. This line of cases is known as the Rogers/ Singletary line of cases.

In Rogers, the Fourth Circuit held that "all non-mandatory conditions of supervised release must be announced at a defendant's sentencing hearing." United States v. Rogers, 961 F.3d 291, at 296 (4ᵗʰ Cir. 2020).

The requirement to announce all non-mandatory conditions of supervised release at sentencing is consistent with the requirement "that discretionary conditions be adequately explained." Id. at 298.

The district may comply with the announcement requirement by incorporating the special terms of supervised release by reference to the presentence investigation report. Id. at 299.

The Fourth Circuit vacated Rogers's sentence and remanded for resentencing.

In Singletary, the district court omitted two conditions of supervised release that were included in the district court's written judgment. The Fourth Circuit vacated Singletary's sentence and remanded for resentencing. United States v. Singletary, 984 F.3d 341 (4ᵗʰ Cir. 2021)

Singletary had agreed to an appeal waiver in his plea agreement.

13

The Fourth Circuit held in Singletary that discretionary conditions of supervised release that appear for the first time in a written judgment have not been imposed on the defendant and therefore, fall outside the scope of the appeal waiver. Id. at 345.

In the case of Daniel Matthis, a new special condition of supervised release was imposed in the written judgment that was not orally announced at sentencing: "The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition." United States v. Matthis, 103 F.4th 193, 196 (4th Cir. 2024)

The Fourth Circuit concluded that the written judgment "imposes a new condition by outlining an additional obligation." Id. at 198.

The Fourth Circuit held in Matthis that there is a clear rule. According to Rogers and Singletary I, when the district court fails to orally pronounce discretionary conditions of supervised release, the Fourth Circuit vacates the entire sentence and remands for resentencing. Id. at 198.

The Fourth Circuit did vacate Matthis' sentence and remanded for resentencing. Id. at 200.

The district court in Mr. Payne's case herein included the same special condition of supervised release in the written judgment omitted at sentencing as in Matthis: "the defendant shall warn any residents that the premises may be subject to searches." (JA210)

14

The district court did not incorporate the special conditions of supervised release by reference to the presentence investigation report. (JA112)

The only remedy for inclusion of added conditions in Mr. Payne's written judgment is to vacate Mr. Payne's sentence and remand for resentencing. <u>Rogers</u>, supra; <u>Singletary</u>; supra, <u>Matthis</u>; supra.

At the opening of the sentencing hearing the district court stated: "Okay. Then I think- and I did not see any problems with any of the conditions of supervised release that were recommended. They all looked appropriate. But I'm glad to hear any objections if anyone has concerns about any of them." (JA69)

Both the government and the defense responded "No..." (JA69)

The district court concluded "Okay, So I will adopt the presentence report as is. And as to all matters in the report, the Court adopts those as findings of fact up to the recommendation page." (JA69)

The Sentencing Recommendation page of the presentence report is on page 28. The recommendations of standard conditions of supervised release are on pages 29, 30, 31. (JA208, JA209, JA210) The special conditions of supervised release are on pages 31, 32 of the presentence investigation report. (JA210, JA211)

The district court did not adopt by reference the special conditions of supervised release in her opening findings.

15

II.     **THE DISTRICT COURT LACKED JURISDICTION TO REVOKE THE DEFENDANT'S TERM OF SUPERVISED RELEASE AFTER ITS EXPIRATION IN CASE 1:19CR623-1.**

A.     **Standard of Review.**

The Fourth Circuit reviews de novo the legal issue "whether the district court has jurisdiction to rule upon alleged violations of supervised release." United States v. Harris, 878 F.3d 111, 115 (4th Cir. 2017).

Mr. Payne's second term of supervised release expired on March 10, 2023. (JA13). A Petition for Warrant or Summons for Offender under Supervision was filed against Mr. Payne on March 2, 2023 which set forth four alleged violations of supervised release. (JA13, JA14)

An arrest warrant was issued on March 6, 2023 as to Mr. Payne for supervised release violation. (JA6)

Mr. Payne was arrested in the Southern District of Florida on December 6, 2023. (JA6, JA88, JA89)

Mr. Payne's supervised release hearing was held on June 21, 2024. (JA63)

B.     **Application of 18 U.S.C. § 3583(i).**

"(i) Delayed Revocation.- The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration

16

of the term of supervised release for any period reasonably necessary for adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." 18 U.S.C. § 3583(i).

18 U.S.C. § 3583(i) provides two conditions for a delayed revocation following the expiration of the term of supervised release.

The first condition is a time restraint for the period reasonably necessary for the adjudication of matters before the expiration.

The second condition is that a warrant or summons has been issued before the expiration alleging violation of supervised release.

As recognized by the district court, the second condition of a timely filing of a petition against Mr. Payne on March 2, 2023 before the expiration of supervised release on March 10, 2023 has clearly been met. (JA92)

It is Payne's argument that the first condition of 18 U.S.C. § 3583(i) was not met. Payne's supervised release hearing was not held within a reasonably necessary time for its adjudication.

Payne was arrested in Florida on December 6, 2023. (JA6, JA88, JA89, JA91). His supervised release hearing was held over 6 months later on June 21, 2024.

17

It is not reasonably necessary to require over six months to hold a supervised release hearing once the defendant is available.

The district court commented that "when he pled guilty, it was agreed that it would be heard at the same time as his sentencing on the new charge." (JA92)

Payne did not agree as to the date of his supervised release revocation hearing. Rather, at his change of plea hearing in case 1:23CR229-1 the district court stated "I'll also schedule the supervised release violation for that same date and time, 19CR623." (JA57)

### C.    The Fugitive Tolling Doctrine.

The fugitive tolling doctrine is that the clock for purpose of supervision is stopped while a defendant is a fugitive. United States v. Buchanan, 638 F.3d 448, 457 (4th Cir. 2011)

The Fourth Circuit approved the fugitive tolling doctrine in the supervised release context in the case of William Buchanan. Id.

Buchanan absconded while he was on supervised release and remained a fugitive for 13 years. Id. at 448-449. Buchanan used various aliases while he was a fugitive. Id. at 450.

Prior to the expiration of Buchanan's term of supervised release, a petition for revocation was filed with the court Id. at 449.

He was charged with additional violations after his term of supervised release expired and while he was a fugitive. Id.

The issue in Buchanan was whether his term of supervised release was tolled while he was a fugitive such that the district court could consider violations occurring after the expiration of supervised release. Id. pp. 450, 451.

In its reasoning the Fourth Circuit stated "The supervised release statutes do not address the issue of fugitive tolling and we have not previously addressed it in the supervised release context." Id. at 452.

The Fourth Circuit held that "a term of supervised release is tolled when a defendant absconds from supervision." Id.at 455.

Mr. Payne respectively objects to the fugitive tolling doctrine. He makes this objection as a preservation issue recognizing that a Fourth Circuit panel has explicitly adopted the fugitive tolling doctrine.

Mr. Payne bases his objection on the reasoning of the First Circuit Court of Appeals set forth in Buchanan, Id. pp. 454, 455.

The First Circuit Court of Appeals reasoned that Congress has two statutes dealing with delayed revocation: 18 U.S.C. § 3624(e) (imprisonment of 30 days or more on a different crime) and 18 U.S.C. § 3583(i). United States v. Hernandez-Ferrer, 599 F.3d 63, 64 (1st Cir. 2010) Buchanan, supra, at 454, 455.

The First Circuit reasoned "the expression of one thing is the exclusion of other things." Id at 67-68. Buchanan, supra, at 454.

The Fourth Circuit applied the fugitive tolling doctrine also to Phillip Thompson, a native of Jamaica, who illegally reentered the United States during his five year term of supervised release. United States v. Thompson, 924 F.3d 122 (4th Cir. 2019)

The district court found and the Fourth Circuit affirmed that Thompson's term of supervised release was tolled beginning in December, 2014 Id. at 127, 130.

However, the Fourth Circuit held that the district court erred in determining the end of the tolling in Thompson's case. The Fourth Circuit vacated the district court's order and remanded the case back to the district court for further considerations. Id. at 129

The Fourth Circuit stated "A defendant does not become a fugitive for tolling purposes by virtue of missing a meeting with a probation officer, or simply because he violates a condition of supervised release." Id.

"Buchanan makes clear that fugitive tolling stops when 'federal authorities are capable of resuming supervision' of the defendant, ...." Id. at 131

**D.    The district court erred in failing to determine the ending date that Payne's supervised release was tolled.**

The government presented its case as to fugitive tolling arguing that it was a combination of the fugitive tolling doctrine and unreasonable delay. (JA90) The

government argued the beginning date of fugitive tolling would be calculated from October 5, 2022 when Mr. Payne incurred new criminal charges [the basis for 1:23CR229-1] plus 72 hours to report to the probation officer for a fugitive tolling beginning date of October 8, 2022. (JA90)

The Court found that fugitive tolling began on October 8, 2022. (JA90)

The Court found that Mr. Payne was arrested on December 6, 2023, over a year later. (JA90, JA91)

The Court concluded that Mr. Payne had been brought "before the Court for resolution within a reasonable time." (JA91)

The Court, as in Thompson, supra, failed to find a proper ending date of fugitive tolling.

It is unclear if the Court extended fugitive tolling for Mr. Payne from October 8, 2022 to his arrest date of December 6, 2023, a period of 14 months.

Mr. Payne's case to very similar to Mr. Thompson's case because Payne's term of supervised release could only have been extended five months whereas Mr. Thompson's term of supervised release could only have been extended six months,

"Instead, under the fugitive tolling doctrine, the clock stopped running in December of 2014, with six months still to go on the term." Thompson, supra, at 131.

Like Thompson, Mr. Payne, beginning October 8, 2022, only had 5 months more of his supervised release term remaining. The most that Mr. Payne's term of supervised release could have been extended was five months.

Fugitive tolling stops when 'federal authorities are capable of resuming supervision.' <u>Thompson</u>, supra. at 131.

Mr. Payne was arrested on December 6, 2023 (JA6, JA88, JA89, JA91). Fugitive tolling stopped on December 6, 2023. The most that Mr. Payne's term of supervised release was extended was 5 months 2 days until May 8, 2024. Payne's supervised release revocation hearing was held on June 21, 2024.

The district court failed to determine if the delay between May 8, 2024 and June 21, 2024 was a reasonable period of delay under 18 U.S.C. § 3583(i).

**E.     The district court clearly erred in finding that the beginning date for fugitive tolling was October 8, 2022.**

Fugitive status, absconding supervision, and failure to report or committing a violation are three different concepts.

The more stringent concept is fugitive. As an adjective, fugitive is fleeing or having fled from pursuit or arrest. As a noun, a fugitive is one who flees as from pursuit, one who is an exile or refugee. <u>Standard College Dictionary</u>, Funk & Wagnells; Harcourt, Brace & World, Inc.,© 1968.

The defendants in <u>Buchanan</u>, supra, and <u>Thompson</u>, supra, were fugitives. They avoided detection with the use of aliases.

22

Mr. Payne did not use an alias.

Abscond is the middle ground between fugitive and failing to report. The Fourth Circuit applies the fugitive tolling doctrine to the status of absconding. <u>Buchanan</u>, supra, at 455. Abscond is a verb meaning "to depart suddenly and secretly, especially to escape the law." <u>Standard College Dictionary</u>, supra.

It may be confusing but Mr. Payne had two separate sets of new charges. One set of new charges was in Virginia. One set of new charges was by the High Point, North Carolina Police Department, which was assumed by the United States Attorney's Office in The Middle District of North Carolina.[case 1:23CR229-1]

On April 29, 2022 Mr. Payne was arrested in Virginia for obtaining property by false pretense and grand larceny. Mr. Payne self surrendered on September 28, 2022. One cannot self surrender to law enforcement and at the same time be an absconder. On September 28, 2022 Mr. Payne is not an absconder. (JA13)

Mr. Payne was arrested on October 5, 2022 by the High Point Police Department on drug and firearm charges. (JA13)

Failure to report to the probation officer and even committing a supervised release violation is not the equivalent of absconding.

"A defendant does not become a fugitive for tolling purposes by virtue of missing a meeting with a probation officer, or simply because he violated a condition of supervised release." <u>Thompson</u>, supra, at 129

The district court clearly erred in finding the beginning of fugitive tolling as to Mr. Payne on October 8, 2022 when Mr. Payne had failed for 72 hours to report to his probation officer that Mr. Payne had been arrested on October 5, 2022 by the High Point Police Department. (JA92)

The Government failed in its burden of proof that Mr. Payne was an absconder.

The critical status for application of the fugitive tolling doctrine is absconder. Buchanan, supra, at 455.

Probation officer White talked with Mr. Payne on September 26, 2022 about Mr. Payne surrendering in Virginia to face criminal charges. (JA82)

Mr. Payne surrendered in Virginia on September 28, 2022. (JA13)

Mr. Payne maintained a residence with his family. He did good auto body work. (JA75)

Mr. White and Mr. Payne didn't maintain a regular meeting schedule. (JA76)

There were times when Mr. Payne did not report but he would contact Mr. White after the fact in order to let Mr. White know what was going on. (JA81, JA82)

Mr. Payne is arrested by the High Point Police Department on October 5, 2022. (JA13)

Mr. Payne does not report his arrest by October 8, 2022.

Mr. White and Probation Officer Caldwell attempted to call Mr. Payne after September, 2022 and Ms. Caldwell attempted to make contact with Mr. Payne at his last known address. (JA89)

The probation office maintained a minimum supervision of Mr. Payne. There is no evidence it made a reasonably diligent search for Mr. Payne in October, 2022 and thereafter by checking with his family or his business as to Mr. Payne's whereabouts.

Mr. Payne clearly failed to report in October, 2022 and thereafter. However, failure to report is not absconding. Failure to report to the probation office is a passive act. Absconding supervision is a positive action.

**F.     Any fugitive tolling must begin no earlier than March 6, 2023.**

Mr. Payne's supervised release term was set to expire on March 10, 2023. Probation Office White filed the Petition for Supervised Release Violation on March 2, 2023. (JA13)

The arrest warrant for Mr. Payne is issued on March 6, 2023. (JA6)

The beginning date of fugitive tolling as to Mr. Payne would be no earlier than March 6, 2023.

"The date [to begin fugitive tolling] may often be the date on which a warrant issues for the defendant's arrest based on the defendant's failure to report when instructed to by a probation office." Thompson, supra, at 130.

Even if the fugitive tolling doctrine applies in Mr. Payne's case, the period of tolling would only be from March 6, 2022 to March 10, 2022, a period of 5 days.

The clock begin running on December 6, 2023 with Mr. Payne's arrest in Florida. Mr. Payne's supervised release revocation hearing was held on June 21, 2024.

There were 196 days between Mr. Payne's arrest and supervised hearing, excluding the date of arrest and the date of supervised release hearing.

Tolling 5 days from 196 days leaves 191 days available to try Mr. Payne for supervised release violations.

191 days, over 6 months, is not reasonably necessary for a delayed revocation hearing.

The district court did not have jurisdiction to hold Mr. Payne's supervised release revocation hearing on June 21, 2024 pursuant to 18 U.S.C. § 3583(i).

## **CONCLUSION**

Camden Antwain Payne seeks the relief that the Fourth Circuit Court of Appeals vacate his sentence in case 1:23CR229-1 and remand this case back to the

district court because the district court's written judgment contained special conditions of supervised release which the district court did not announce in open court at the sentencing hearing and did not incorporate by reference in open court at sentencing.

Camden Antwain Payne seeks the relief in 1:19CR623-1 that the Fourth Circuit vacate his supervised release revocation sentence because the district court lacked jurisdiction for delayed revocation pursuant to 18 U.S.C. § 3583(i). Even with application of the fugitive tolling doctrine, Mr. Payne's revocation hearing was not held within the period reasonably necessary following his arrest.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Mr. Payne requests oral argument before the Fourth Circuit Court of Appeals.

Respectfully submitted this the 25th day of November, 2024.

*/s/ George E. Crump, III*

George E. Crump, III
ATTORNEY AT LAW
P.O. Box 1523
Rockingham, NC  28380
(910) 997-5544
georgecrump@bellsouth.net

*Counsel for Appellant*

27

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with type-volume limits because excluding the

parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure

statement, table of contents, table of citations, statement regarding oral argument,

signature block, certificates of counsel, addendum, attachments):

      this document contains <u>5,446</u> words.

2.    This document complies with the typeface requirements because:

      this document has been prepared in a proportional spaced typeface using

<u>Microsoft Word</u> in <u>14-point Times New Roman</u>

*/s/ George E. Crump, III*

George E. Crump, III

ATTORNEY AT LAW

P.O. Box 1523

Rockingham, NC  28380

(910) 997-5544

georgecrump@bellsouth.net

*Counsel for Appellant*
